

FILED

MAY 2 6 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION* SWAS

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

In re:                                    )        Case No. 09-48102-D-11
                                          )
IREVA HOLDINGS, LLC,                      )
                                          )
                Debtor.                   )
_____)
                                          )
IREVA HOLDINGS, LLC,                      )        Adv. Pro. No. 10-2535-D
                                          )
                Plaintiff,                )        Docket Control No. HSM-1
v.                                        )
                                          )
CONSERVATION ENDOWMENT FUND,              )
                                          )
                Defendant.                )        DATE:  April 27, 2011
_____)        TIME:  10:00 a.m.
                                          )        DEPT:  D
and related counterclaim.                 )
                                          )
_____)

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM DECISION

The parties to this adversary proceeding, defendant/counter-claimant Conservation Endowment Fund ("CEF") and plaintiff/counter-defendant Ireva Holdings, LLC ("Ireva") have filed cross-motions for partial summary judgment. For the reasons discussed below, the court will grant CEF's motion and deny Ireva's motion.

### I.  INTRODUCTION

The following facts are not in dispute. Ireva owns a hotel property commonly known as 28 South Lassen Street, Susanville,

1  California (the "property").  CEF holds a deed of trust against

2  the property securing an obligation on which Ireva has, since at

3  least August 2009, been in default.  The obligation became all

4  due and payable on February 1, 2010.  CEF has filed a proof of

5  claim in Ireva's chapter 11 case contending the obligation

6  amounts to not less than $780,329.

7       In December 2009, the property was flooded and sustained

8  severe water damage.  Ireva had earlier obtained an insurance

9  policy on the property issued by Evanston Insurance Company

10  ("Evanston"), which has paid out approximately $670,146 on the

11  water damage claim.  After deduction of approximately $135,000

12  paid to a remediation company and certain other sums, there

13  remains, according to Ireva's attorney, approximately $500,000

14  which he holds in his trust account pending resolution of the

15  rights of CEF and Ireva thereto.  These remaining proceeds are

16  the subject of the cross-motions.

17       Ireva filed the petition commencing the chapter 11 case in

18  which this adversary proceeding arises on December 23, 2009,

19  after the flood damage had occurred but before Evanston had paid

20  out anything on the insurance claim.

21                          II.  ANALYSIS

22       This court has jurisdiction over the cross-motions pursuant

23  to 28 U.S.C. sections 1334 and 157(b)(1).  The cross-motions are

24  core proceedings under 28 U.S.C. section 157(b)(2)(B) and (K).

25  The cross-motions are brought pursuant to Fed. R. Civ. P. 56,

26  made applicable in this proceeding by Rule 7056.[1]

27  _____

28       1.  Unless otherwise indicated, all Code, chapter, and
    section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-
                                              (continued...)

A.  Standards for Summary Judgment

Where a motion for summary judgment is before the court, the court is to render judgment for the movant if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a), incorporated herein by Rule 7056.  The moving party bears the burden of producing evidence showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).  Once the moving party has met its initial burden, the non-moving party must show specific facts demonstrating the existence of genuine issues of fact for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).

B.  CEF's Interest Prevails Over Ireva's § 544(a) Powers

The cross-motions concern the first and second causes of action of Ireva's complaint -- to determine that CEF does not have a perfected security interest in the proceeds and to avoid an unperfected lien in the proceeds, and the first two causes of action of CEF's counterclaim -- for declaratory and injunctive relief.[2]  As to these causes of action, the parties agree there are no genuine disputes as to any material facts.

The central issue is whether CEF had, at most, an equitable lien in the insurance proceeds, unperfected as against a

_____

1.(...continued)
1532.  All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2.  The cross-motions do not concern Ireva's third cause of action, an objection to CEF's claim.

- 3 -

hypothetical judgment lien creditor or a bona fide purchaser, and

therefore, subject to avoidance by Ireva as the debtor in

possession in this case, pursuant to § 544(a), or whether, by

virtue of the language of its deed of trust, CEF had an interest

in the proceeds sufficient to put subsequent judicial lien

creditors and bona fide purchasers on constructive notice, such

that CEF's interest prevails over Ireva's rights and powers under

§ 544(a).

The relevant language in CEF's deed of trust is found in

paragraph 5:

> 5.   Hazard Insurance.  Borrower agrees to provide,
> maintain and deliver to Lender fire insurance
> satisfactory and with loss payable to Lender.  The
> amount collected under any fire or other insurance
> policy may be applied by Lender upon any indebtedness
> secured hereby and in such order as Lender may
> determine, or at option of Lender the entire amount so
> collected or any part thereof may be released to the
> Borrower. . . .
> . . .
> If Borrower obtains earthquake, flood or any other
> hazard insurance, or any other insurance on the
> Property, and such insurance is not specifically
> required by the Lender, then such insurance shall: (i)
> name the Lender as loss payee thereunder, and (ii) be
> subject to all of the provisions of this paragraph 5.

CEF's Ex. B, p. 7.

It is undisputed that under this language, Ireva was

required to name CEF as loss payee on the Evanston policy, and

that Ireva did not do so.  Thus, CEF opens with the contention

that it has an equitable lien on the proceeds, under <u>Alexander v.

Security-First Nat'l Bank</u>, 7 Cal. 2d 718 (1936):

> [I]f there is an agreement for insurance between
> parties standing in these relationships [lessor/lessee,
> mortgagor/mortgagee, vendor/vendee], and the party
> obligated, in violation of his agreement, procures
> insurance payable to himself alone, the other party for

- 4 -

whose benefit the agreement was made has an equitable
lien on the proceeds of such insurance.

7 Cal. 2d at 724.

However, it is also undisputed that CEF did not file a UCC-1
financing statement with the Office of the Secretary of State.
Thus, Ireva argues that even if CEF has an equitable lien on the
proceeds as a result of Ireva's failure to name CEF as loss
payee, the equitable lien is unperfected and thus is defeated by
Ireva's strong-arm powers under § 544(a).[3]

Section 544(a) permits a trustee, and by way of § 1107(a), a
debtor in possession, to avoid transfers of property of the
debtor that would be voidable by a judicial lien creditor or bona
fide purchaser under state law.  The section also permits
avoidance of unrecorded interests in real property, even where
there has been no transfer.  In re Seaway Express Corp., 912 F.2d
1125, 1128 (9th Cir. 1990).  The § 544(a) rights of a trustee or
debtor in possession as a hypothetical bona fide purchaser or
judicial lien creditor are defined by state law.  Robertson v.
Peters (In re Weisman), 5 F.3d 417, 420 (9th Cir. 1993) (bona
fide purchaser); Siegel v. Boston (In re Sale Guaranty Corp.),
220 B.R. 660, 669 (9th Cir. BAP 1998) (judgment lien creditor).

Ireva's argument depends on these three propositions:  (1)
that "[t]he Insurance Proceeds are a 'general intangible,'" as

---

3.   Ireva does not seriously dispute, if at all, that absent
the intervention of bankruptcy, the language of the deed of trust
would result in CEF having an enforceable equitable lien in the
proceeds senior to any interest of Ireva.  "Ireva has never
disputed that CEF could obtain a judgment for an equitable lien
on the Insurance Proceeds in a state court."  Counter Motion and
Opposition to Motion for Partial Summary Judgment, filed April
26, 2011 ("Counter Motion"), 2:21-22.

- 5 -

defined in Cal. Comm. Code § 9102(a)(42); (2) that "the Insurance

Proceeds are within the scope of Article 9 [of the California

Commercial Code];" and (3) that "[a]s a result, CEF was required

to file a UCC-1 financing statement in order to perfect any

alleged security interest in the Insurance Proceeds."  Counter

Motion, 5:17-22, 6:1-4.

The first of these propositions -- that the proceeds are a

general intangible -- may or may not be correct.[4]  The second --

that the proceeds are within the scope of Article 9 -- is

correct.[5]  However, the third and most important for present

purposes -- that CEF was required to file a UCC-1 financing

statement in order to perfect its interest in the proceeds -- is

not correct.[6]

---

4.   The former definition of "general intangibles," in
former Cal. Comm. Code § 9106, included this sentence:  "Any
interest or claim in or under any policy of insurance is a
general intangible."  See Dynair Electronics, Inc. v. Video
Cable, Inc., 55 Cal. App. 3d 11, 17 (1976).  The present
definition, in Cal. Comm. Code § 9102(a)(42), does not.  Because
the issue in this case turns on Ireva's third proposition (see
below), it is not necessary that the court determine whether
"general intangibles," as presently defined in the Commercial
Code, includes insurance policies and claims in or under
insurance policies.

5.   See 321 Henderson Receivables Origination LLC v.
Sioteco, 173 Cal. App. 4th 1059, 1074-75 (2009).

6.   Ireva cites no authority for this proposition, but
merely alleges the second proposition as deriving from the first
and the third as deriving from the second:

>    The Insurance Proceeds are a "general intangible," . .
>    . .   Cal. Comm. Code § 9102(a)(42).  At the
>    commencement of the bankruptcy case, the Insurance
>    Proceeds only existed as a general intangible (a cause
>    of action against Evanston Insurance Co.).   [¶]
>    Accordingly, the Insurance Proceeds are within the
>    scope of Article 9.  As a result, CEF was required to
>                                             (continued...)

- 6 -

Subdivisions 9310(a) and (b)(11) provide:

9310.  (a) Except as otherwise provided in subdivision
(b) and in subdivision (b) of Section 9312, a financing
statement must be filed to perfect all security
interests and agricultural liens.

(b) The filing of a financing statement is not
necessary to perfect a security interest that satisfies
any of the following conditions:  . . .

(11) It is a security interest in, or claim in or
under, any policy of insurance including unearned
premiums which is perfected by written notice to the
insurer under paragraph (4) of subdivision (b) of
Section 9312.  (Emphasis added.)

Subdivision 9312(b)(4), in turn, states:

A security interest in, or claim in or under, any
policy of insurance, including unearned premiums, may
be perfected only by giving written notice of the
security interest or claim to the insurer.  (Emphasis
added.)

The bottom line is that it simply was not necessary under

Article 9 that CEF file a UCC-1 financing statement to perfect

its interest in the proceeds.[7]

---

6.(...continued)
file a UCC-1 financing statement in order to perfect
any alleged security interest in the Insurance
Proceeds.  Cal. Comm. Code § 9310(a).

Counter Motion, 5:17-6:3.  As will be seen below, the section
governing perfection of interests in and claims in or under
insurance policies is § 9310(b), not § 9310(a).

7.  The parties have not indicated whether CEF gave notice
of its interest to Evanston, as required under § 9312(b)(4), but
it seems unlikely, as in that case, CEF would have been added as
a named loss payee.  However, the purpose of such notice would
have been to perfect CEF's interest as between it and Ireva and
to protect Evanston from distributing the proceeds to the wrong
entity.

The loss payable endorsement in an insurance policy
"defines only the obligation of the insurer.
[Citations.]  The provision is intended to protect the
(continued...)

- 7 -

1    Ireva next focuses on the use of the term "equitable lien"

2 in CEF's lead case, <u>Alexander</u>, and relies on several other cases

3 for the proposition that equitable liens (and constructive

4 trusts) are invariably "unperfected" for purposes of § 544(a).

5 The first of these is <u>Markair, Inc. v. Markair Express, Inc.</u>, 172

6 B.R. 638 (9th Cir. BAP 1994), in which the Ninth Circuit

7 Bankruptcy Appellate Panel held that constructive trusts and

8 equitable liens, to the extent they remained inchoate at the time

9 of the bankruptcy filing (that is, to the extent the creditor had

10 not reduced its claim to judgment), are defeated by a trustee's

11 strong-arm powers under § 544(a).   172 B.R. at 641-43.

12    This and the other cases cited by Ireva are not relevant

13 here for the simple reason that they address the imposition of an

14 equitable lien or some other equitable remedy (express trust,

15 resulting trust, constructive trust) in the <u>absence</u> <u>of</u> a recorded

16 instrument sufficient to put a hypothetical judgment lien

17 creditor or bona fide purchaser on constructive notice of the

18
_____

19        7. (...continued)
       insurer by permitting it to pay the named insured and
       to be thereafter free of claims by other persons who
20       might have an interest in the lost property." (<u>Ferro</u>
       <u>v. Citizens Nat. Trust & Sav. Bank</u> (1955) 44 Cal. 2d
21       401, 410 [282 P.2d 849].)   The rights of the parties do
       not depend on the interpretation of the loss-payable
22       clause of the policy.   [Citing <u>Alexander</u> 7 Cal. 2d at
       p. 726.]
23
   <u>Ziello v. Superior Court</u>, 36 Cal. App. 4th 321, 329-30 (1995).
24
   Because Evanston was made aware of CEF's interest prior to
25 distribution, the problem has been avoided here.   Ireva has not
   alleged, nor could it, that notice to Evanston would have
26 provided actual or constructive notice to a hypothetical judicial
   lien creditor or bona fide purchaser; thus, the issue of notice
27 to Evanston would contribute nothing to Ireva's position
   regarding the proceeds.   And as between CEF and Ireva, CEF
28 prevails under the <u>Alexander</u> decision.

creditor's claims (and in some cases, in the absence of any
documentation at all).  See Markair, 172 B.R. at 643;[8] In re
Seaway Express Corp., 912 F.2d at 1128-29;[9] In re Lewis W.
Shurtleff, Inc., 778 F.2d 1416, 1419 (9th Cir. 1985) [unrecorded
deed]; In re North American Coin & Currency, Ltd., 767 F.2d 1573,
1576 (9th Cir. 1985);[10] Huber v. Danning, 147 B.R. 526, 530 (9th
Cir. BAP 1992) [unrecorded grant deed]; In re Foam Systems Co.,
92 B.R. 406, 409 (9th Cir. BAP 1988) [neither express trust nor
resulting trust will be used to remedy failure to perfect
security interest]; Tort Claimants Comm. v. Roman Catholic
Archbishop (In re Roman Catholic Archbishop), 335 B.R. 868, 879
(Bankr. D. Or. 2005) [no notice of claimants' interests in real
property records].

 Here, there was a recorded instrument sufficient to put a
hypothetical judgment lien creditor or bona fide purchaser on
constructive notice of CEF's interest in any insurance proceeds;
namely, the deed of trust itself, and in particular, the language
of paragraph 5.  This fact distinguishes this case from those
cited by Ireva and brings it in line with those cited by CEF.  In

---

 8.  "Airwork extended credit to the debtor, but did not
request or receive assignment of the insurance proceeds."  Id.
It was particularly important that "Airwork did not rely in any
specific sense on payment from the proceeds, and the debtor did
not indicate that payment to Airwork would be guaranteed
therefrom."  Id. at 642.

 9.  "When a creditor claims an inchoate equitable interest
in real property owned by the debtor at the commencement of the
case, which interest is not evidenced by a recorded instrument
and not yet granted by a state court, the trustee as bona fide
purchaser prevails."  Emphasis added.

 10.  "[The customers] were never promised that any special
measures would be taken to protect their investments."

In re Terra Villa Apartments, Ltd., 101 B.R. 755 (Bankr. N.D.

Fla. 1989), a properly recorded deed of trust required the

property owner to insure the premises for the benefit of and

payable to the lender.  As in this case, the owner failed to name

the lender as loss payee on the policy.  The court held that the

provision in the deed of trust created an equitable lien in the

lender's favor and that the recorded deed of trust gave

constructive notice of the owner's obligation to insure the

property for the benefit of the lender, with the result that the

lender prevailed over the rights of the debtor in possession

under § 544(a)(3).  101 B.R. at 758-59.

The lender's right to insurance proceeds, granted by the

terms of a recorded deed of trust, also prevailed over a debtor

in possession in In re Moore, 54 B.R. 781 (Bankr. E.D.N.C. 1985).

> The obligation on the part of the debtors to provide
> insurance to protect [the lender's] security was a
> conspicuous part of the recorded Deed of Trust and
> Security Agreement.  Any purchaser of the real property
> would take the property subject to the deed of trust
> and the obligations contained therein.

54 B.R. at 784.

Terra Villa Apartments and Moore were decided under Georgia

and North Carolina law, respectively.  See Terra Villa

Apartments, 101 B.R. at 758; Moore, 54 B.R. at 784.  California

law is to the same effect.  Every properly recorded conveyance of

real property or of an interest in real property is constructive

notice of the contents thereof to subsequent purchasers and

mortgagees.  Cal. Civ. Code §§ 1213, 1215, emphasis added.

Thus, "constructive or inquiry notice obtained in accordance

with California Civil Code section 19 can defeat a trustee's [§

544(a)(1)] claim."   Robertson, 5 F.3d at 420, citing In re

Probasco, 839 F.2d 1352, 1354-56 (9th Cir. 1988).   Civil Code

section 19, in turn, provides:

> Every person who has actual notice of circumstances
> sufficient to put a prudent man upon inquiry as to a
> particular fact, has constructive notice of the fact
> itself in all cases in which, by prosecuting such
> inquiry, he might have learned such fact.

Cal. Civ. Code § 19.   Such constructive notice is conclusively

presumed from the act of recording.   612 South LLC v. Laconic

Limited Partnership, 184 Cal. App. 4th 1270, 1278 (2010), quoting

Gates Rubber Co. v. Ulman, 214 Cal. App. 3d 356, 364 (1989).[11]

In short, under California law, a bona fide purchaser would

have taken title to the property with constructive notice of

CEF's deed of trust and the contents thereof, including paragraph

5, by which Ireva agreed to provide fire insurance satisfactory

and with loss payable to CEF, and agreed that the proceeds of

such fire insurance could be applied by CEF against the debt then

owing or, at CEF's option, released to Ireva.   A bona fide

purchaser would also have had constructive notice that, as

provided in the last sentence of paragraph 5, quoted above, any

other insurance, such as the Evanston policy at issue in this

proceeding, would be subject to those same provisions.   Ireva's

---

11.   A judgment lien creditor fares less well than a bona
fide purchaser.

> [U]nder California law, a judgment lien creditor is not
> a purchaser for value.   In re Mellor, 734 F.2d 1396,
> 1401 n.4 (9th Cir. 1984) ("a judgment lien creditor is
> not a bona fide purchaser, and therefore is subject to
> all prior interests in the property, whether known or
> unknown, recorded or unrecorded") . . . .

Siegel, 220 B.R. at 669; 20th Century Plumbing Co. v. Sfregola,
126 Cal. App. 3d 851, 854 (1981).

1 status as a debtor in possession with the powers of a trustee

2 under § 544(a) is subject to CEF's rights under the deed of

3 trust, of which a hypothetical bona fide purchaser would have

4 been on notice, and Ireva cannot avoid CEF's interest in the

5 proceeds under that section.

6       This conclusion is based on California law governing bona

7 fide purchasers with constructive notice; it is unaffected by

8 certain cases cited by the parties suggesting that all equitable

9 liens are subject to the avoiding powers of a trustee or debtor

10 in possession under § 544(a).  The cited language in those cases

11 is merely dicta; the holdings were based on lack of recordation.

12 For example, In re Chenich, 100 B.R. 512 (9th Cir. BAP 1987), the

13 panel concluded that a reference in a recorded deed of trust to

14 "any extensions or renewals" of the original secured notes was

15 sufficient to provide constructive notice of a subsequent

16 unrecorded extension agreement but not of unrecorded grant deeds

17 not mentioned in the extension agreement.  100 B.R. at 514.  See

18 also Stepp v. McAdams, 88 F.2d 925, 928 (9th Cir. 1937)

19 [unrecorded contract did not create equitable lien].

20       Finally, Ireva's counsel argued at the hearing that to the

21 extent CEF is relying on recordation of the deed of trust as the

22 source of its right to the insurance proceeds, that right is

23 subject to Cal. Civ. Code § 2938, governing assignment-of-rents

24 clauses, and that because CEF's deed of trust does not refer to

25 an "assignment" of the insurance proceeds, no such assignment was

26 made.  Counsel went on to suggest that an agreement to have

27 insurance coverage does not create an assignment of the insurance

28 proceeds; he cited the Alexander case for that proposition.

Cal. Civ. Code § 2938 applies to assignments of rents, issues, and profits, not to insurance proceeds. The parties have offered and the court has found no reason to believe use of the word "assignment" is required in order for an equitable lien to arise if the borrower breaches an agreement to provide insurance for the benefit of the lender; the <u>Alexander</u> decision does not so hold or even suggest. That case <u>does</u> stand for the proposition that <u>in the absence of agreement</u>, a tenant has no obligation to procure insurance for the benefit of his landlord, and vice versa.

> <u>In the absence of special provisions in the lease</u> there is no obligation on the lessee to procure insurance for the benefit of his lessor insuring against fire or other risk, and neither lessor nor lessee ordinarily has an interest in the proceeds of insurance obtained by the other on his own separate insurable interest.

<u>Alexander</u>, 7 Cal. 2d at 723, emphasis added. The same rule applies to the mortgagor/mortgagee relationship. <u>Id.</u> But if an agreement <u>does</u> exist on the part of one to provide insurance for the benefit of the other, as in this case, the breach of the agreement gives rise to an equitable lien, <u>id.</u> at 724; words of "assignment" are simply not required.

Under the authorities cited earlier, CEF's recorded deed of trust provided constructive notice of its contents, including paragraph 5, to bona fide purchasers. Thus, bona fide purchasers had constructive notice that the proceeds of insurance on the property could be applied by CEF to the indebtedness secured by the deed of trust, or at CEF's option, released to Ireva. An "assignment" of insurance proceeds akin to an assignment-of-rents clause was simply not necessary.

C.  CEF Has the Right to Control Disposition of the Proceeds

Paragraph 5 of the deed of trust plainly gives CEF the right to control the disposition of the insurance proceeds, and Ireva's obligation secured by the deed of trust is and for a long period of time has been in default; in fact, the obligation became all due and payable over a year ago.  Under the decisions cited by CEF -- Martin v. World Sav. & Loan Ass'n, 92 Cal. App. 4th 803, 808-09 (2001), and Ford v. Manufacturers Hanover Mortg. Corp., 831 F.2d 1520, 1523-25 (1987), which are directly on point, CEF has the right to control the disposition of the insurance proceeds in its discretion.  Ireva does not seriously contend otherwise; instead, it merely falls back on its position that the language of paragraph 5 is nothing more than a security agreement for the insurance proceeds under Article 9 of the Commercial Code, and that CEF failed to perfect its security interest.  That argument has been addressed above.

D.  CEF Is Entitled to Injunctive Relief

In the second cause of action of its counterclaim, CEF seeks to enjoin Ireva and its attorney from disbursing any of the insurance proceeds without CEF's express written consent or order of this court, and further requests that such relief be ordered to survive any conversion of this case from chapter 11 to another chapter and to survive any dismissal of this case.  Ireva does not oppose "an injunction notwithstanding dismissal or conversion of the case that such Insurance Proceeds shall remain under the jurisdiction of the Bankruptcy Court."  Counter Motion, 12:17-20.

It appears the court's conclusions -- (1) that CEF's interest in the proceeds prevails over any interest, right, or

power of Ireva, and (2) that CEF has the right to control the

disposition of the proceeds in its sole discretion -- would apply

in the case under any chapter to which it might be converted and

would also apply in the event of dismissal; Ireva does not

suggest otherwise.   Thus, the court will grant the requested

injunction.

### III.   CONCLUSION

For the reasons discussed above, CEF's motion for partial

summary judgment will be granted; Ireva's will be denied.

The court will issue an appropriate order.

Dated: May 26, 2011

ROBERT S. BARDWIL
United States Bankruptcy Judge

- 15 -

**CERTIFICATE OF MAILING**

I, ___Kamee Vang___ , in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Kenrick Young
1930 Del Paso Rd., Suite 121
Sacramento, CA 95834

Aaron Avery
Hefner Stark & Marois
2150 River Plaza Dr., #450
Sacramento, CA 95833

DATE: 5-27-11

_Kamee Vang_
Deputy Clerk

3